Rosenbaum Grain Corporation and Rosenbaum Brothers, A Corporation v. United States (No. 4146)[1]

---

[1] C. A. D. 18.

United States Court of Customs and Patent Appeals, October 31, 1938

*J. Milton Guy, Jr.*, for appellants.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney, and *Frank X. O'Donnell, Jr.*, junior attorney, of counsel), for the United States.

[Oral argument October 6, 1938, by Mr. Guy, Jr., and Mr. Welsh]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the amount of duty payable on several cargoes of rye imported by appellants from Poland. Fifteen protests are involved; fourteen of these were filed by the appellant Rosenbaum Grain Corporation and one by the appellant Rosenbaum Brothers. For the purposes of trial before the Customs Court the protests were consolidated.

The rye arrived at the port of Chicago at various times during the year 1934. Upon arrival of each cargo of the grain at the port of Chicago, consumption entry was made therefor and the grain was delivered to the importers and placed in unbonded elevators, redelivery bonds having been furnished by appellants pursuant to the provisions of section 15 of the Food and Drugs Act (21 U. S. C. 15), and article 534 of the Customs Regulations of 1931.

Estimated duties of 15 cents per bushel of 56 pounds were paid on the weight of the rye in its condition upon the dates of entry of the rye, the same being dutiable under paragraph 728 of the Tariff Act of 1930.

Rye being a foodstuff, the same was, after being placed in elevators in Chicago, subject to inspection by the United States Department of Agriculture under the provisions of the Food and Drugs Act of 1906, *supra*.

Pursuant to such provisions, the Department of Agriculture took samples of said rye for inspection purposes. Upon such inspection it

was found that the rye was contaminated with excreta, whereupon, with respect to each entry, the collector forwarded to appellants a detention order against the merchandise. The following is illustrative of each of such orders:

U. S. TREASURY DEPARTMENT

U. S. DEPARTMENT OF AGRICULTURE

Office of the Collector                                          Port No. C. 1605

District No. 39    Port of Chicago    11–3–34, 19

Sir:

The examination of shipment of Rye per S. S. Hagarty Entry No. C2974–A–B,. Marks and Number 17,910,858 lbs. has been completed and found not to comply with the provisions of the Food and Drugs Act of June 30, 1906, in that it is

ADULTERATED: Because filthy—contaminated with excreta.

11–3–34. STATEMENT OF CONDITIONS TO BE FULFILLED. Permission is granted to clean this shipment of rye by separating the good material from the bad and hold same for inspection by this Department. Notify the Chief, Chicago Station, on the reverse side of this form when you have completed this work. No portion of this consignment should be disposed of until release is received by you from this office, except that the rye may be examined bin by bin and so released if satisfactory.

(The above is a decision of the Food and Drug Inspection Service of the Department of Agriculture prohibiting the release of this merchandise.)

In case of failure to comply with the instructions stated above within three months from date of this notice, you are directed to return the above-described merchandise to the Collector of Customs, or action will be taken upon your bond given in compliance with section 11 of the said act. When the conditions have been complied with, and the merchandise is ready for inspection, notify Chief of Station, Chicago, Ill., by delivery of this notice properly certified on top of reverse, to Room No. 1222 P. O. Bldg.

ANTHONY CZARNECKI,
*Collector.*

To: ROSENBAUM BROS., INC.,
         c/o *E. E. Marks Co.*,
            *327 S. LaSalle St., Chicago.*

In accordance with the permission set out in said detention orders appellants cleaned the rye and in the course of such cleaning also dried it, they claiming that such drying was a necessary incident in the cleaning process.

All of the excreta and refuse which was preserved from the cleaning of the rye was burned under customs supervision. The drying and cleaning processes combined resulted in a loss from the total bulk of the original cargoes, and about 18,000 bushels of excreta obtained in the cleaning process was burned under customs supervision, as above noted. The total amount of the rye when released by the Department of Agriculture was approximately 3,900,000 bushels, which was approximately 178,000 bushels less than the original amount of the rye when entered by appellants.

.As about 18,000 bushels of excreta had been destroyed under customs supervision, the collector in liquidating the entries in 1935 made allowance of this amount, but refused to make allowance for the alleged losses in moisture, dust, screenings, etc., amounting to approximately 160,000 bushels. That this loss of 160,000 bushels occurred in the cleaning and drying processes is not disputed.

There was introduced in evidence by appellants as typical of the releases of the various cargoes of rye, Exhibit 7, which reads as follows:

Copy to Collector Chicago

United States Department of Agriculture

Food and Drug Inspection Station

EHB:EB.

CHICAGO, ILL., 2–19–35,
*Port No. C. 1643.*

Rosenbaum Grain Corp.,
 c/o E. E. Marks Co.,
  327 S. La Salle St., Chicago.

Dear Sir:

The examination of your shipment of rye, per SS. Lake Gleneagles, Entry No. C3745 C and D, from N. V. Bunges Handel. Danzig. (Cons. Invoice.)

Marks and Nos. in bulk has been completed and the goods need not be further detained, in so far as Section 11 of the Food and Drugs Act is concerned. The good portion amounting to 256,607.48 bushels, resulting from the cleaning of this material, is hereby released.

 Respectfully,

HARRY D. GARRETT,
*Chief of Station.*

NOTE.—The rejections (1,340 bu.) are to be destroyed under Customs supervision.

When entered, the cargo referred to in said release consisted of 268,698 bushels. There was therefore a total loss of 12,091 bushels in this particular cargo resulting from the cleaning and drying processes, of which loss an allowance of only 1,340 bushels was made by the collector, this amount of excreta having been destroyed under customs supervision.

The Government introduced in evidence Exhibit 1–C, being a report submitted by one of the appellants to the Department of Agriculture showing the result of the cleaning of one cargo of rye. Said report reads as follows:

Report of Cleaning Polish Rye ex S/S Hagarty 1/17/35

Actual amount of Rye outturned from Steamer_____ 319, 566/14 bu.
Amount of rejects to be destroyed under customs super-
 vision_____ 1534/26
Invisible shrink due to cleaning (evaporation, etc.)_____ 4610/30
Shrinkage a/c kiln drying part of cargo_____ 3111/54
Amount of clean rye resulting from cleaning_____ 310, 309/16

9256/54  9, 256/54 bu.

The Customs Court in its decision quoted said Exhibit 1–C and with respect thereto stated:

It will be noted that one-half of 1 per centum of the importation constituted the screenings recovered from the separating process and destroyed under customs supervision and presents the further claim that 1½ per centum of the importation was lost through evaporation and about 1 per centum through kiln drying. The collector in liquidating the entry allowed the visible loss amounting to 1,534 and 26/56 bushels, but disallowed the loss claimed to be due to cleaning and kiln drying in amount of 7,722 and 28/56 bushels. The above schedule is representative of the claim made by the plaintiff of the loss in weight claimed in the various shipments of rye. * * *

Much testimony was introduced by appellants to the effect that it was necessary to dry the rye in order properly to clean the same. This was denied by witnesses who testified in behalf of the Government. There is no definite testimony as to the respective amounts of loss due to evaporation, dust, chaff, excreta, etc., other than the amount of excreta actually recovered in the cleaning process.

It is appellants' contention that the total loss resulting from the cleaning and drying processes combined was approximately 3½ per centum, of which only approximately one-half of 1 per centum was allowed by the collector in liquidating the entries; that appellants were entitled to an allowance of the full loss of 3½ per centum, and this suit is for the recovery of the estimated duties paid upon approximately 3 per centum of the weight of the rye at the time of entry; that by reason of the detention orders issued against the rye only that portion released by the Department of Agriculture became an importation, and that the balance, representing the losses in cleaning and drying, is conclusively presumed to be a nonimportation.

For the purpose of our decision the foregoing is a sufficient statement of the facts in the case.

The Customs Court overruled the protests and entered judgment accordingly. From such judgment this appeal was taken.

The relevant provisions of the Tariff Act of 1930 read as follows:

Par. 728. Rye, 15 cents per bushel of fifty-six pounds; * * *.

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

Inasmuch as there is no issue with respect to the relevant provisions of the Food and Drugs Act, *supra*, and proceedings thereunder, it is unnecessary to quote the same herein.

The relevant provision of the Customs Regulations of 1931, article 534, reads as follows:

*Art. 534. Delivery under bond.*—Merchandise subject to examination by representatives of the Department of Agriculture in accordance with the provisions

of the food and drugs act, the insecticide act, and the caustic poison act shall not be delivered to the consignee prior to report of examination unless a bond has been given (customs Form 7551 or 7553) in an amount equal to the invoice value of the goods, together with the duty thereon.

We cannot agree with the contention of appellants that all of the loss resulting from the cleaning and drying of the rye should be considered as a nonimportation. It is clear that a part of such loss arose in the drying of the rye, the so-called "good rye" released weighing less at the time of such release than it did at the time of entry of the rye. It is admitted that this "good rye" was imported and therefore none of it may be considered as a nonimportation. There is no claim that at the time of entry the rye contained excessive moisture, but on the contrary it is established that it did not.

There is no evidence in the record from which it can be ascertained what proportion of the loss was due to dust, to excreta, or to screenings, etc., which could not be preserved for destruction under customs supervision. While the entire loss is established, and the quantity of excreta, etc., destroyed under customs supervision is also established, the difference between these two amounts is shown only as consisting of loss through moisture, dust, excreta, etc., which passed off in the air in the cleaning and drying processes, and necessarily the separate amounts of each could not be determined. This is termed in the evidence as an "invisible loss."

It follows from the foregoing that a part of appellant's claim is based upon the difference between the weight of the "good rye" when released and its weight at the time of entry, but we are unable to ascertain from the record what this difference amounts to, since there is nothing to show what the good rye weighed at the time of entry.

It therefore becomes unnecessary for us to determine whether the losses other than of moisture in the good rye and of excreta, etc., preserved and destroyed under customs supervision should be considered as nonimportations, for even if they should be so considered appellants have not established the amount of such losses.

In the case of *United States* v. *G. Falk & Brother*, 204 U. S. 143, there was involved the dutiable weight of certain imported tobacco. The court said:

The moisture which the tobacco in the case at bar absorbed can not be said to be an impurity * * * even though moisture in tobacco is a variable quantity and its amount can be estimated by weighing the tobacco at different times. Nor can it be considered as an independent, non-taxable substance, even though, as conceded in this case, it was absorbed on the ocean voyage. * * *

We think it immaterial whether such loss of moisture here involved occurred as a necessary result of the cleaning process, or whether, as the Government contends, the drying of the rye was unnecessary in the cleaning process. In either event the good rye released for con-

sumption weighed less when released than it weighed when entered, and there was and could be no nonimportation of such loss of moisture.

Appellants' counsel earnestly contends that the cleaning process was mandatory, and that because of the demand of the Government they suffered a loss of about 160,000 bushels; that if this requirement of cleaning had not been made this 160,000 bushels could have been sold by appellants in the commerce of the United States.

With respect to this contention we would observe that if appellants had not imported contaminated rye no losses would have occurred, and that the Government's detention order, with respect to cleaning, was not mandatory but permissive only; in other words it was a privilege accorded to appellants. If in the exercise of this privilege losses resulted to appellants the fault was not that of the Government.

Appellants rely upon a line of cases of which the case of *Kreutz & Co.* v. *United States*, 20 C. C. P. A. (Customs) 109, T. D. 45752, is an example. In that case fourteen bags of ergot of rye were imported at New York. Seven of the bags were found unfit for use by the Department of Agriculture and their exportation or destruction was ordered. The seven rejected bags were exported, but not under customs supervision. The collector assessed them for duty and the importer protested. The Customs Court overruled the protest, and on appeal this court held that said seven bags were nonimportations and nondutiable. After citing the case of *McLean* v. *United States*, 6 Peters 404, and quoting therefrom, we said:

We can not find that the rule declared in the language above quoted has ever been modified in any way by the Supreme Court.

We are therefore of the opinion that, inasmuch as it appears that the condemned merchandise here in question never actually entered into the commerce of the United States, but was actually exported, though not under customs supervision, it was not subject to duty because its importation was prohibited and duties could not be lawfully assessed thereon. * * *

The distinction between the case last cited and the case at bar is apparent. There the merchandise involved never entered the commerce of the United States and was actually exported. Here the cleaned rye was released for consumption and a portion of the claims of appellants is based on the difference in weights of the good rye released for consumption at the time of its entry and at the time of its release, and the only possible nonimportation arising from this part of appellants' claim would be moisture which, it is conceded, was not excessive. As hereinbefore stated, the amount of appellants' claims based upon these facts is not shown in the record, and, assuming without deciding that dust, excreta, etc., lost in the air in the cleaning process might be considered as a nonimportation, we have no means of determining the quantity thereof because it is not separately shown.

The observations last above made are also applicable to other cases cited by appellants.

In a supplemental brief filed by appellants we find the following:

Our identical proposition of non-importation was sustained by the United States Customs Court in the case of Frank M. Modica vs. United States, C. D. 24, decided August 1, 1938, since the briefs herein were filed, reported in Treasury Decisions of August 11, 1938, Volume 74, No. 6. In that case the identical defense which is urged by government counsel in the cases at bar, was rejected.

We have examined the case cited and find no conflict between the decision in that case and the decision of the Customs Court in the case at bar. In the case cited all of the merchandise involved was condemned and exported under customs supervision. The merchandise weighed less when exported than when imported, due to normal shrinkage. The collector took duty on the basis of difference in weight between the time of entry and exportation thereof. The importer protested and the court sustained the protest, holding that none of the merchandise entered the commerce of the country and that the duty taken thereon at the time of entry should have been refunded.

In the case at bar most of the merchandise did enter the commerce of the country, and a part of appellants' claim is based upon loss in weight of such merchandise.

While we regard it as unnecessary to our decision herein we think it proper to observe that, so far as the record discloses, the so-called "invisible loss," insofar as it consisted of dust, chaff, etc., was properly a part of the dutiable weight of the rye, for it does not appear that the same was in excess of the usual amount found in such merchandise. At any rate, it does appear that it was the presence of excreta which caused the issuance of the detention orders, and there is no evidence in the record as to what part of the "invisible loss" constituted such excreta.

Appellants call attention to section 562 of said tariff act, which provides, among other things, that merchandise placed in a bonded warehouse may be cleaned and thereafter withdrawn for consumption upon payment of the duties accruing thereon in its condition and quantity and at its weight at the time of withdrawal from warehouse; that if said rye had been placed in bonded warehouses appellants would have been entitled to refunds of duties here sought and appellants contend that therefore it is clear that Congress did not intend that, when a loss occurs through cleaning or reconditioning before goods have entered commerce, duties should be imposed upon goods so lost.

Section 562 is a statutory provision relating only to goods entered in bonded warehouse. If Congress had intended that a like practice should prevail with respect to goods not placed in bonded warehouse,

it presumably would have expressly so provided. While in the case at bar it may be assumed that the losses were the same as if the rye had been placed in bonded warehouses and cleaned, it is easy to perceive that mischiefs could arise and the way made easy to avoid the payment of proper duties if the rule were made general. At any rate it is not within our province to broaden the provisions of the statute so as to embrace the merchandise here involved.

In the view which we have taken of the case it is unnecessary for us to consider other questions raised by the parties.

We hold that upon the record before us appellants have not established that the losses resulting from the cleaning and drying of the rye, for which no allowance was made by the collector, were of such a character as should be considered to be nonimportations, and we further hold that if any part of such losses not allowed by the collector should be so considered to be nonimportations, appellants have not established the amount thereof.

For the reasons stated herein the judgment appealed from is *affirmed*.